**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | NO. 04-20044-2-KHV |
| | ) | Hon Kathryn H. Vratil |
| | ) | |
| PAMELA TYLER    , | ) | |
| Defendant. | ) | |
| | ) | |

**REPLY TO THE GOVERNMENT'S OPPOSITION
TO PAMELA TYLER'S MOTION FOR A REDUCTION IN SENTENCE**

<u>Introduction</u>

Ms. Pamela Tyler meets all the criteria for compassionate release. She has multiple serious medical conditions that make her vulnerable to COVID-19. She has limited protection from the vaccine: she has an autoimmune disease and has not received a booster shot. FCI Dublin, where she is incarcerated, has been on lockdown/code red status for most of this year due to the high threat of infection. She has rehabilitated herself after 17 years of incarceration, earning accolades from the prison chaplain and other incarcerated women. She has not had a single disciplinary write-up. The government does not contest any of these facts in its opposition.

Instead of responding directly, the Government attempts to suppress her argument that the 30-year sentencing disparity between herself and co-defendant, who recently had his sentence lowered from life to 30 years, is also a "extraordinary and compelling" basis for compassionate release. The Government is correct that Ms. Tyler did not raise the sentencing disparity in her request for compassionate release to the Warden but issue exhaustion is not required. The Government also highlights Ms. Atkins's opposition to Ms. Tyler's release but the victim's views,

while relevant, are not dispositive. Ms. Tyler must show that her situation is "compelling and extraordinary" and that she has fulfilled the purposes of sentencing. The Government's opposition does not cast doubt on the fact that Ms. Tyler meets the statutorily-mandated criteria for a reduction in sentence.

## I.   MS. TYLER HAS PROPERLY EXHAUSTED HER REMEDIES

Ms. Tyler submitted an administrative request to the Warden of FCI Dublin on January 20, 2021, citing poor health – primarily kidney failure and hypertension – and COVID-19 as justifications, which the Warden denied. Ex. F. Therefore, she has exhausted her remedies and may seek relief from this Court based on the "extraordinary and compelling" circumstance of the pandemic and her vulnerability to a poor outcome should she contract the disease. *United States v. McGee*, 992 F.3d 1035, 1042-43 (10th Cir. 2021); Opp. Br. at 4 (citing cases). The Government concedes that she may seek compassionate release based on her medical condition. Opp. Br. at 6 ("This Court is limited to addressing only the issues presented to the respective Warden for consideration of compassionate release.").

The Government's attempt to hobble Ms. Tyler's argument that the 30-year sentencing disparity between her and the lead defendant Andre Ivory also constitutes an "extraordinary and compelling" circumstance directly contradicts precedent in this Court. Ms. Tyler did not mention that her co-defendant had received a sentence reduction of 30 years in her request to the Warden because it had not yet happened. In order for this failure to preclude mentioning the 30-year disparity, issue exhaustion must be required by the First Step Act, which is silent on the question. *United States v. Parada*, No. 5:03-40053-JAR-1, 2020 WL 4589781, at *4 (D. Kan. Aug. 10, 2020), *reconsideration denied*, No. 5:03-40053-JAR-1, 2020 WL 7024890 (D. Kan. Nov. 30, 2020), *aff'd*, No. 20-3244, 2022 WL 108972 (10th Cir. Jan. 11, 2022) (citing *Sims v. United States*,

530 U.S. 103, 111 (2000)). Nor would it be appropriate to impose an issue exhaustion requirement because the process for requesting compassionate release is "inquisitorial rather than adversarial." *Id.* at 5. The BOP reviews each request, applying its own internal policies and expertise without outside input. Therefore, "a judicially created issue-exhaustion requirement is inappropriate." *Id.*

In fact, judges in this District have "repeatedly rejected the issue exhaustion challenge to motions for compassionate release." *United States v. Gaskin*, No. 17-20052-JAR-1, 2021 WL 980412, at *2 (D. Kan. Mar. 16, 2021); *United States v. Hudson*, No. 16-20034-02-JAR, 2021 WL 38013, at *3 (D. Kan. Jan. 5, 2021) ("But this Court has repeatedly rejected the issue exhaustion challenge to motions for compassionate release."). The Government does not distinguish these cases or even mention them. Instead, it cites cases from the Seventh Circuit, the Ninth Circuit (unpublished), and the Western District of Washington. Opp. Br. 6-7. Those cases do not govern Ms. Tyler's motion, and thus this Court may consider all of her arguments that her situation is extraordinary and compelling. *United States v. Valdez*, No. 14-20096-08-JAR, 2021 WL 63304, at *2 (D. Kan. Jan. 7, 2021) (rejecting the Government's issue exhaustion argument and considering all the movant's claims).

Finally, if this Court were to require issue exhaustion, it would be futile in this case. The Warden is authorized to recommend compassionate release under provisions in the CARES Act. The guidance lists the criteria for transfer to home confinement and sentencing disparity is not one of the grounds on which the Warden is authorized to grant compassionate release. Memorandum from William Barr to the Bureau of Prisons (Mar. 26, 2020) (citing age, health, security assessment, re-entry plan, and crime of conviction as criteria for home confinement). [1] Sentencing

---

[1] https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf

3

disparity is mentioned as a consideration available to judges in sentencing and, by extension, in considering whether compassionate release motions are warranted. 18 U.S.C. § 3553(a)(6).

## II. MS. TYLER'S SITUATION IS EXTRAORDINARY AND COMPELLING BECAUSE OF HER VULNERABILITY TO COVID-19, INADEQUATE VACCINATION, AND A 30-YEAR SENTENCING DISPARITY WITH HER REMAINING INCARCERATED CO-DEFENDANT

Ms. Tyler's situation presents a unique combination of circumstances that make her qualified for compassionate release. She has serious health issues and is incarcerated in FCI Dublin which has a terrible record of protecting women in its custody. She has not been adequately vaccinated. Finally, the ringleader of the conspiracy in which she was involved now has a sentence which is half the length of hers. This combination is truly extraordinary and compelling.

### A. Ms. Tyler Is Incarcerated at FCI Dublin, a Known COVID-19 Hotspot

FCI Dublin is one of the most dangerous women's prisons in the federal system. It is currently at Level 3 (Code Red) lockdown, as it has been for the vast majority of 2022.[2] The Government's boilerplate language about the BOP's efforts to control the spread of COVID-19 dodges the fact that Ms. Tyler, who has stage-3 kidney failure and hypertension, is imprisoned in a toxic environment. The Government asserts there was only one COVID-19 case at FCI Dublin on June 1, 2022, when someone checked the BOP website. Opp. Br. at 11. Given that COVID-19 spreads rapidly, that single-day snapshot is essentially meaningless. According to the Office of the Inspector General at Department of Justice, there was one case at FCI Dublin on December 2, 2020, which grew to 16 by December 13, 75 by the 19, was 106 two days later, before peaking at

---

[2] https://www.bop.gov/locations/institutions/dub/ (last visited June 15, 2022).

188 on December 22. The number of cases did not return to one until January 13, 2021.[3] Nor was this outbreak an anomaly. On December 12, 2021, there was one case, and the numbers went up slowly at first before peaking at 84 on February 2, 2022 – well after the BOP's vaccine roll-out. *Id.* In spite of the BOP's best efforts, COVID-19 simply cannot be controlled in communal spaces that house many people, where social distancing is impossible and rigorous masking and hygiene protocols cannot be met, whether that be a college dormitory, nursing home, or prison.[4]

FCI Dublin has also been plagued with other problems, including sexual abuse of incarcerated women. As of the beginning of May 2022, 25 employees were under investigation for sex crimes, drugs, and falsifying records.[5] There have been numerous violations of the Prison Rape Elimination Act, necessitating a special inquiry and a visit by a congressional delegation that called FCI Dublin "a cultural, toxic environment."[6] Five employees, including the former Warden and Chaplain, have been indicted for allegedly sexually abusing women in their custody.[7] Ms. Tyler cannot care for herself or get the medical attention she needs living in a dysfunctional prison that is on semi-permanent lockdown; her situation meets the standard of "extraordinary and compelling."

### B. The Vaccine Does Not Protect Ms. Tyler From COVID-19, a Potentially Devastating Illness

---

[3] Dep't of Justice, Active COVID-19 Cases Over Time, https://experience.arcgis.com/experience/ab22fb4c564e4f4b986e257c685190e8/page/Facility-Case-Trends/ (last visited June 14, 2022) (filtered for information on FCI Dublin).

[4] CDC, *Living in Shared Housing*, https://mail.google.com/mail/u/0/#inbox/FMfcgzGpGTJVFqWtJDlmdfqJkqlhnSPC?projector=1&messagePartId=0. 1

[5] Lisa Fernandez, *25 Dublin prison employees under investigation for sex, drugs, lying abuses*, KTVU Fox 2 (May 5, 2022), https://www.ktvu.com/news/25-dublin-prison-employees-under-investigation-for-sex-drug-lying-abuses

[6] Bay Area Members of Congress Describe Dublin Prison as a 'Disgrace and Cultural Riot," NBC Bay Area (Mar. 14, 2022), https://www.nbcbayarea.com/news/local/east-bay/bay-area-members-of-congress-describe-dublin-prison-as-a-disgrace-and-cultural-riot/2837453/

[7] Tony Hicks, Another guard at Dublin prison charged with sex abuse of inmate, Pleasanton Weekly (Mar. 28, 2022). https://pleasantonweekly.com/news/2022/03/28/another-guard-at-dublin-prison-charged-with-sex-abuse-of-inmate

Because of her underlying medical conditions, Ms. Tyler has a higher chance of a poor outcome if she contracts COVID-19. The vaccine against COVID-19 has done much to alleviate the devastating effect of the disease in general, but the question is whether the vaccine can protect Ms. Tyler specifically. Unfortunately, considerable medical evidence suggests that is not the case. Ms. Tyler is immunocompromised which means that the vaccine is less effective for her. *United States v. Avalos*, No. 13-20026-JAR-1, 2021 WL 3550281, at *4 (D. Kan. Aug. 11, 2021) (citing CDC study that "COVID-19 vaccine efficacy is unknown in [immunocompromised people]" and denying the motion because Avalos had not shown he was immunocompromised). The presence of the Omicron variant has further eroded the effectiveness of the vaccine. *United States v. Brunetti*, No. 01-cr-257 (JFK), 2022 WL 92753, at *4 (S.D.N.Y. Jan. 10, 2022) ("In light of the rapid spread of the Omicron variant and its partial resistance to the COVID-19 vaccines, the Court ... concludes that [movant] has established that extraordinary and compelling circumstances' support his release.")

The cases upon which the Government relies do not create a blanket prohibition against granting compassionate release to anyone would is vaccinated. *United States v. Lipsey*, No. CR0701208001PHXGMS, 2022 WL 180725, at *2 (D. Ariz. Jan. 20, 2022) ("Courts in this [the Ninth] circuit have found that a defendant's receipt of the COVID-19 vaccine *weighs against* granting compassionate release") (emphasis added); *see United States v. Barnette*, No. 77-20014-JAR-1, 2021 WL 2805376, at *6 (D. Kan. July 6, 2021) ("[T]here can be no bright-line rule that a vaccinated individual is no longer at compellingly elevated risk . . . .").

The Government does not answer the concerns raised in Ms. Tyler's opening brief about her specific health concerns but instead incorrectly asserts that vaccination has put Ms. Tyler on "equal footing as a large percentage of the American population…." Opp. Br. at 19. Most of the

American population does not live in cramped quarters with no ability to social distance. Most people have ready access to hand sanitizer and other hygiene products. Those on the outside can get at-home COVID-19 tests, medication to alleviate COVID symptoms, and, if needed, medical care. Prisons are known COVID incubators. *United States v. Johnson*, No. 98-cr-860-7 (ARR), 2021 WL 5755047, at *4 (E.D.N.Y. Dec. 3, 2021) ("The risk of breakthrough infection is greater among incarcerated individuals than members of the general public."). Ms. Tyler is at much higher risk of a poor COVID-19 outcome than the average American.

Furthermore, the BOP's COVID-19 Vaccine Guidance, dated March 11, 2021, does not mention boosters.[8] Ms. Tyler received her second dose of the Pfizer vaccine in November 2021, more than six months ago. Opp. Br. at 13. After that period, the effectiveness of the Pfizer vaccine decreases from 87 percent to 45 percent.[9] The CDC concludes that these "findings underscore the importance of receiving a third dose of mRNA COVID-19 vaccine to prevent both COVID-19–associated ED/UC [Emergency Department/Urgent Care] encounters and COVID-19 hospitalizations among adults." Accordingly, the CDC recommends at least one booster to maintain protection – two for those who are older than 50.[10] Those who are immunocompromised should get an additional primary and booster shot. *United States v. Valencia-Lopez*, No. 05-CR-841 (NGG), 2022 WL 198604, at *3 (E.D.N.Y. Jan. 21, 2022) (citing CDC guidance). Ms. Tyler has not been offered, much less received, a third primary shot or a booster, so she is vulnerable to

---

[8] https://www.bop.gov/resources/pdfs/covid19_vaccine_guidance_20210311.pdf
[9] The Moderna and Johnson and Johnson vaccines also have dramatic declines in effectiveness. Jill M. Ferdinands, et al., Waning 2-Dose and 3-Dose Effectiveness of mRNA Vaccines Against COVID-19, Center for Disease Control (Feb. 18, 2022),
https://www.cdc.gov/mmwr/volumes/71/wr/mm7107e2.htm#:~:text=During%20the%20Omicron%2Dpredominant%20period%2C%20mRNA%20vaccination%20was%20highly%20effective,ED%2FUC%20encounters%20by%20the
[10] Centers for Disease Control, COVID-19 Boosters (Updated May 24, 2022),
https://www.bop.gov/resources/pdfs/covid19_vaccine_guidance_20210311.pdf

COVID-19 and not on "the same footing" as non-incarcerated Americans who have been completely vaccinated.

Ms. Tyler remains at risk for a poor COVID-19 outcome. The Government asserts that "her risk of alleged complications has dramatically decreased" but most of the case law it cites does not support that proposition. Opp. Br. at 19-20. The movant in *United States v. Newsome* did "not appear to suffer from any underlying conditions that may place him at a high risk of suffering severe illness were he to again contract COVID-19." No. 113-CR-00187DADSKO1, 2021 WL 4066332, at *6 (E.D. Cal. Sept. 7, 2021). Although the movant in *United States v. Barnett* had multiple underlying conditions, his motion was denied in August 2021, several months before the CDC recommended a booster shot based on a growing awareness that the effects of the vaccine wane.[11] No. 90-CR-913 (LAP), 2021 WL 3550217, at *3 (S.D.N.Y. Aug. 10, 2021); *see also United States v. Gibbs*, 2021 WL 3929727 (E.D. Pa. Sept. 2, 2021) (single underlying condition and pre-booster guidance). It is undisputed that Ms. Tyler suffers from kidney disease and hypertension, both of which place her in the high-risk category. She has not received a booster shot. The efficacy of the vaccine she received in November 2021 gives her more than a one in two chance of getting COVID-19, thus meeting the "extraordinary and compelling" standard.

### C. The Current 30-year Sentence Disparity between Ms. Tyler and her Co-Defendant Andre Ivory Is "Extraordinary and Compelling"

Ms. Tyler is currently serving a 60-year sentence, which is twice as long as the ringleader of the witness tampering conspiracy for which she was convicted. The Government limits its response to this fact by arguing that Ms. Tyler should not be able to raise the issue, which is

---

[11] Media Statement, CDC Expands Eligibility for COVID-19 Booster Shots (October 21, 2021), https://www.cdc.gov/media/releases/2021/p1021-covid-booster.html

incorrect because issue exhaustion is not required. ." *United States v. Gaskin*, No. 17-20052-JAR-1, 2021 WL 980412, at *2 (D. Kan. Mar. 16, 2021).

The Government cannot respond substantively to Ms. Tyler's point that a 30-year disparity caused by changes in the law is extraordinary and creates a compelling case for adjusting Ms. Tyler's sentence to redress this imbalance. The Tenth Circuit has recognized that "Congress's purpose in enacting § 3582(c)(1)(A) was to provide a narrow avenue for relief 'when there is not a specific statute that already affords relief but 'extraordinary and compelling reasons' nevertheless justify a [sentence] reduction.'" *United States v. McGee*, 992 F.3d 1035, 1047 (10th Cir. 2021) (cleaned up). Although district courts cannot automatically grant compassionate release on the basis of the non-retroactive changes to sentencing laws in the First Step Act, judges may do so if "the combination of such a sentence and a defendant's unique circumstances" amount to "extraordinary and compelling" circumstances. *Id.* at 1048.

Ms. Tyler is not challenging her original sentence in this motion. The courts have already determined that her sentence is within the limits of the law. She simply submits that her health, the danger of COVID-19, her inadequate protection from the vaccine, and Mr. Ivory's sentence reduction combine to constitute grounds to give her compassionate release. The Government does not challenge the substance of this argument.

## III.   MS. TYLER HAS FULFILLED THE PURPOSES OF SENTENCING MAKING HER ELIGIBLE FOR A REDUCTION IN SENTENCE

Ms. Tyler has fulfilled the purposes of sentencing and is ready to return to her community. She has been incarcerated for 17 years. The chaplain at FCI Dublin has recognized her spiritual growth and the other women incarcerated with her have attested to her leadership and positive influence upon them. She has completed numerous programs and has a spotless disciplinary

record. Again, the Government does not question any of this, effectively conceding that Ms. Tyler has met the requirements of 18 USC 3553(a).

The Government's opposition to Ms. Tyler's request for compassionate release rests on the understandable reaction of Ms. Atkins, who was shot in the leg as a result of a conspiracy in which Ms. Tyler played a role. Ms. Atkins has every reason to fear the Pamela Tyler who was involved in a conspiracy to harm her. But that woman no longer exists. In the past 17 years, Ms. Tyler has changed into a different person. She has become the person who can write the following:

> I know that it isn't easy to forgive the person who caused you grief, pain, and sorrow. I'm not asking Tania Atkins to forget what I have done against her, I ask that one day Tania Atkins would forgive me for my involvement in causing her to suffer in so many areas. I'm sincerely remorseful for the fear, depression, pain, and anxiety that I have caused in her life. As I said before I can't change the action of my past, but I can, and have, changed the way I live in the present and future.

This Court can put conditions on Ms. Tyler's release that would ease Ms. Atkins concerns, and Ms. Tyler is open to any such restriction.

While this Court will, and should, sympathize with Ms. Atkins, it is the statute that must determine whether Ms. Tyler receives a reduction in sentence. The Government asserts that Ms. Tyler is a danger to society simply because of her behavior 17 years ago. That is not sufficient. *United States v. Gluzman*, No. 7:96-CR-323 (LJL), 2020 WL 4233049, at *19 (S.D.N.Y. July 23, 2020), *reconsideration denied*, No. 96-CR-323 (LJL), 2020 WL 6526238 (S.D.N.Y. Nov. 5, 2020) (granting compassionate release after 24 years to a woman who murdered her husband in spite of the vehement opposition of her son and brother-in-law). The Government does not address Ms. Tyler's perfect disciplinary record or the Chaplain's testimonial:

> Ms. Tyler has offered support and wisdom to young women who have struggled with being in prison and away from their children. She completed the Houses of Healing course and the Prison Fellowship Academy program. Through all of these activities, Ms. Tyler has displayed a sincere

> desire for spiritual growth, a commitment to personal transformation, and a dedication to serving others. Ex. E at 2.

Ms. Ashforth's endorsement deserves special attention because BOP staff are in the best position to know the people in their custody. *United States v. Rodriguez*, No. 00 CR. 761-2 (JSR), 2020 WL 5810161, at *4 (S.D.N.Y. Sept. 30, 2020). The opposition brief also does not acknowledge that Ms. Tyler completed the Prison Fellowship Academy, an intensive year-long program that helps participants replace criminal thinking and behaviors with new purposes in preparation for return to society.

Far from being a danger to society, Pamela Tyler is now a person whom other women credit with saving them from recidivism.

> After a lifetime of struggling with drug addiction and incarceration, I am now a full-time college student a full-time employee as an Amazon driver, I am financially stable and most importantly… Sober. Miss Tyler always encouraged me to pursue my dreams and be a living example for my children and any others that have survived a past like my own. After years of daily conversations with her, I am a better person. She is such a powerful force of optimism and light to everyone she comes in contact with, even on days when she has every reason not to be. The world is missing out on such a beautiful soul who has touched so many lives. There is no doubt in my mind that, given the chance, she will have a positive impact on many more lives once she is finally free to come home. Ex. H at 15.

> All the years of my life I thought through the darkness that I had no understanding of why I chose to live hatefully and was the angriest person to be around. I personally thank God for assigning Pam to be my mentor (spiritual advisor) as a part of my life experience. I continuously carry on the spiritual learning experience I had with Pam in today's world. Without the deep knowledge of studying the Scriptures of how to renew the mind and letting go to forgiving, and loving myself, my old behavior would have continued to be involved with the system." *Id* at 27.

Ms. Tyler does not require further rehabilitation. Ms. Tyler's children and grandchildren have waited 17 years for her to return home. She has paid a heavy price for her behavior nearly 20 years ago not only in terms of years spent in prison but also in terms of absence inflicted on her family – those whom she loves most. A sentence should not be longer than needed to achieve its

purposes. A 60-year sentence may have been necessary for the person whose "callous" behavior harmed Ms. Atkins, but it is not needed for the person Ms. Tyler is today. Accordingly, she humbly asks that her motion for a reduction in sentence be granted with any conditions this Court thinks appropriate.

    Respectfully submitted,
By: /s/ William Dunn
William Dunn
Wilkes & Dunn, Attorneys and Counselors at Law
111 S. State Street P.O. Box 273
Yates Center, KS 66783
(913) 299-0229
email: billdunnlawyer@gmail.com

/s/ Catherine Sevcenko
Catherine Sevcenko, *Admitted Pro Hac Vice*
National Council for Incarcerated and
Formerly Incarcerated Women and Girls
300 New Jersey Ave, NW #900
Washington DC 20001
617-299-2604 x703

**ATTORNEYS FOR PAMELA TYLER**

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of this motion was served via ECF to all counsel of record, this 17th day of June, 2022.

By: /s/ William Dunn
William Dunn