## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CRIMINAL ACTION |
| v. | ) | |
| | ) | No. 04-20044-02-KHV |
| PAMELA TYLER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

A jury found defendant guilty of conspiracy to kill a federal witness (Count 8), attempted murder of a witness (Count 10) and discharge of a firearm during the commission of a crime of violence (Count 11). On May 30, 2006, the Court sentenced defendant to a controlling term of 60 years in prison. This matter is before the Court on defendant's Motion For Reduction In Sentence Under The First Step Act ("Compassionate Release") (Doc. #628) filed May 12, 2022. For reasons stated below, the Court sustains defendant's motion.

## Factual Background

On March 25, 2004, law enforcement officers arrested Andre Ivory on various drug charges after an informant, Tania Atkins, purchased crack cocaine from him on several occasions. Shortly thereafter and while in custody, Ivory instructed defendant, his girlfriend, to meet with her brother, Mark McGee, to organize and execute a plan to kill Atkins. For approximately one month, Ivory had daily conversations with defendant about the plan to kill Atkins. Eventually, McGee recruited Kyle Crayton to kill Atkins. On April 29, 2004, Crayton rammed his vehicle into the van that Atkins was driving and fired from a 9mm Ruger at Atkins until the gun jammed. Atkins survived but suffered severe injuries.

On December 13, 2005, the jury returned a verdict which found defendant guilty of the charges related to the attempted killing of Atkins (Counts 8, 10 and 11).  See Verdict (Doc. #372). Defendant's total offense level was 43, with a criminal history category I, resulting in a guideline sentence of life in prison.  On May 30, 2006, the Court sentenced defendant to a controlling term of 60 years in prison (20 years on each count, with all sentences to run consecutive with each other).  Defendant appealed her convictions and challenged a number of the enhancements which the Court applied at sentencing. On July 14, 2008, the Tenth Circuit affirmed defendant's convictions and sentence.  United States v. Ivory, 532 F.3d 1095 (10th Cir. 2008).

The Court originally sentenced Ivory to life in prison.  On February 1, 2022, based on Ivory's rehabilitation, the fact that his prior juvenile offender adjudication does not qualify as a conviction for a drug felony offense, changes in the statutory ranges on various drug counts, and a one-level decrease in his total offense level, the Court reduced Ivory's sentence to 360 months in prison and 60 months of home confinement (as a special term of supervised release).  See Memorandum And Order (Doc. #622) at 12.

Defendant currently is confined at FCI Dublin, a Bureau of Prisons ("BOP") facility in Dublin, Ohio.  As of July 12, 2022, 248 inmates and 53 staff members had tested positive for COVID-19.  See COVID-19 Cases, https://www.bop.gov/coronavirus/ (last visited July 12, 2022). Some 243 inmates and 45 staff members have recovered.  See id.  No inmates have died from COVID-19.  See id.

Defendant is 57 years old.  Defendant states that because of chronic kidney disease and hypertension, she is at high risk of contracting COVID-19 and severe illness or death if she contracts it.  With good time credit, defendant's projected release date is July 6, 2055.  Defendant asks the Court to grant compassionate release because of her health conditions, COVID-19 and

the disparity between her sentence and Ivory's revised sentence.

## Analysis

A federal district court may modify a defendant's sentence only where Congress has expressly authorized it to do so. See 18 U.S.C. § 3582(b)–(c); United States v. Blackwell, 81 F.3d 945, 947 (10th Cir. 1996). Congress has set forth only three limited circumstances in which a court may modify a sentence: (1) upon motion of the BOP Director or defendant under Section 3582(c)(1)(A); (2) when "expressly permitted by statute or by Rule 35" of the Federal Rules of Criminal Procedure; and (3) when defendant has been sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c). The Court may order compassionate release for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i).

The Court may entertain requests for compassionate release only upon a motion of the BOP or of defendant after she submits a request to BOP and the earlier of (1) when she "fully exhaust[s] all administrative rights to appeal" or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). The government argues that while defendant has exhausted administrative remedies for relief based on her health conditions and COVID-19, she has not exhausted administrative remedies for relief based on the disparity between her sentence and Ivory's revised sentence. Government's Response To Defendant's Motion For Compassionate Release (Doc. #640) filed June 3, 2022 at 6–7. The Tenth Circuit has not addressed whether a defendant must exhaust administrative remedies as to each issue subsequently raised in a motion for compassionate release, but other courts have reached different conclusions. Compare United States v. Williams, 987 F.3d 700, 703 (7th Cir. 2021) (inmate required to present same or similar ground for compassionate release in request to BOP as

in subsequent motion) with United States v. Ferguson, 536 F. Supp. 3d 139, 142–43 (E.D. Mich. 2021) (issue exhaustion not required; even if it were required, defendant who files administrative request on one set of circumstances can file motion which relies on those same circumstances "in addition to another, which has arisen more recently").  In any event, the Court need not address the issue because the BOP is restricted to granting relief consistent with the definition of extraordinary and compelling reasons in the Sentencing Commission's policy statement.  U.S.S.G. § 1B1.13, Reduction In Term Of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement), cmt. n.1 (Nov. 2018).  The BOP is not authorized to grant compassionate release based on a sentencing disparity because it is not one of the "extraordinary and compelling" grounds for relief under Section 1B1.13.  See United States v. Matthews, No. 20-14597, 2022 WL 807150, at *3 (11th Cir. Mar. 17, 2022); see also United States v. Ortiz-Lopez, No. 8:11-CR-48-VMC-AAS, 2021 WL 2941773, at *2 (M.D. Fla. July 13, 2021) (sentencing disparities do not constitute extraordinary and compelling reason for release because they are not listed in U.S.S.G. § 1B1.13), aff'd, No. 21-12511, 2022 WL 2303965 (11th Cir. June 27, 2022).[1]  Accordingly, exhaustion of administrative remedies on the issue of sentencing disparities would have been futile.  See Garza v. Davis, 596 F.3d 1198, 1203 (10th Cir. 2010) (narrow exception to exhaustion requirement if petitioner can demonstrate exhaustion is futile); United States v. Davis, No. 4:08CR144, 2022 WL 220872, at *2 (E.D. Va. Jan. 25, 2022) (waiver of exhaustion requirement appropriate because any attempt by defendant to raise additional arguments for compassionate release before BOP would

---

[1]     The Eleventh Circuit has held that whether the BOP or a defendant files a compassionate release motion, courts are bound by the Sentencing Commission's policy statement at Section 1B1.13.  See Matthews, 2022 WL 807150, at *3.  In contrast, the Tenth Circuit has held that the Sentencing Commission's policy statement does not apply to motions for compassionate release filed by defendants.  United States v. Maumau, 993 F.3d 821, 837 (10th Cir. 2021); United States v. McGee, 992 F.3d 1035, 1050 (10th Cir. 2021).

be futile); see also United States v. Bryant, 996 F.3d 1243, 1251, 1265 (11th Cir.) (sentencing disparities between co-conspirators does not fall within reasons that Section 1B1.13 identifies as "extraordinary and compelling"), cert. denied, 142 S. Ct. 583 (2021).

The Court may grant compassionate release if defendant establishes that (1) extraordinary and compelling reasons warrant a reduced sentence, (2) a reduced sentence is consistent with applicable Sentencing Commission policy statements and (3) the Section 3553(a) factors warrant a reduced sentence. 18 U.S.C. § 3582(c)(1)(A); Maumau, 993 F.3d at 831; McGee, 992 F.3d at 1042–43. The Tenth Circuit has held that the Sentencing Commission has not issued an "applicable" policy statement for motions for compassionate release filed by defendants. Maumau, 993 F.3d at 837; McGee, 992 F.3d at 1050. Unless and until the Sentencing Commission issues such a policy statement, the second requirement does not apply. See United States v. Warren, No. 11-20040-01-WPJ, 2021 WL 1575226, at *2 (D. Kan. Apr. 22, 2021); see also United States v. Jones, 980 F.3d 1098, 1111 (6th Cir. 2020) (where incarcerated person files motion, district court may skip step two of § 3582(c)(1)(A) inquiry and has full discretion to define "extraordinary and compelling" without consulting policy statement at U.S.S.G. § 1B1.13). Accordingly, the Court evaluates only the first and third requirements.

I.      **Extraordinary And Compelling Reasons For Release**

The Court has discretion to independently determine whether defendant has shown "extraordinary and compelling reasons" that warrant release. See McGee, 992 F.3d at 1044, 1048. In the context of compassionate release, "extraordinary" means "exceptional to a very marked extent." United States v. Baydoun, No. 16-20057, 2020 WL 4282189, at *2 (E.D. Mich. July 27, 2020) (quoting extraordinary, Webster's Third International Dictionary, Unabridged (2020)). "Compelling" means "tending to convince . . . by forcefulness of evidence." Id. (quoting

5

*compelling*, Webster's Third International Dictionary, Unabridged (2020)).   The Court also

considers how the Sentencing Commission has defined extraordinary and compelling reasons for

BOP motions.  See United States v. Carr, 851 F. App'x 848, 853 (10th Cir. 2021) (district court

has discretion to consider definition of extraordinary and compelling reasons in Section 1B1.13

application notes).  For BOP motions, the Sentencing Commission has identified four reasons that

may constitute grounds for compassionate release: (1) defendant's medical condition;

(2) defendant's age; (3) defendant's family circumstances; and (4) a catchall category for an

"extraordinary and compelling reason other than, or in combination with," the first three

categories.  U.S.S.G. § 1B1.13, cmt. n.1.  In addition, the policy statement requires that before

granting relief, defendant must not be "a danger to the safety of any other person or to the

community."  U.S.S.G. § 1B1.13(2) (citing 18 U.S.C. § 3142(g)).

Here, defendant seeks compassionate release based on her health conditions, COVID-19

and the disparity between her sentence and Ivory's revised sentence.  As to defendant's kidney

disease and hypertension, the government concedes that she may have "established extraordinary

and compelling reasons pursuant [to] CDC and/or DOJ guidelines allowing for compassionate

release."  Government's Response To Defendant's Motion For Compassionate Release (Doc.

#640) at 18–20.  Even so, the government argues that because defendant is vaccinated, her medical

condition does not establish extraordinary and compelling reasons for release.  See id. at 17.  The

Court need not address whether defendant's medical conditions by themselves warrant a reduced

sentence because she has established that her medical condition, the disparity between her sentence

and Ivory's revised sentence and her successful rehabilitation together establish extraordinary and

compelling reasons for release.

Defendant argues that the disparity between her sentence of 60 years and Ivory's revised

sentence of 30 years constitutes an extraordinary and compelling reason for release. Both defendant and Ivory were convicted of the same three charges related to the attempted killing of Atkins. Both defendant and Ivory have done well in prison and have a record of continued rehabilitation. But Ivory proposed the plot to murder Atkins. In addition, Ivory pled guilty to several drug charges while the jury found defendant not guilty of the only drug charges against her. Ivory had a much more extensive criminal background than defendant (13 criminal history points compared to one).

The government proffers no justification to sentence defendant to a lengthier term of imprisonment than Ivory, let alone a sentence of some 30 additional years. In these circumstances, the disparity between defendant's sentence of 60 years and Ivory's revised sentence of 30 years is unconscionable and constitutes an extraordinary and compelling reason for release. See United States v. Young, No. 10-20076-01-KHV, 2021 WL 1999147, at *4 (D. Kan. May 19, 2021) (uneven application of First Step Act to various defendants in conspiracy is extraordinary and compelling reason to reduce defendant's sentence); United States v. Ford, 536 F. Supp. 3d 848, 855 (D. Kan. 2021) (uneven application of Amendment 782 to various defendants who had similar involvement in conspiracy is extraordinary and compelling reason for reduced sentence), appeal dismissed, No. 21-3083, 2021 WL 5467261 (10th Cir. July 21, 2021); see also United States v. Xiang, No. 02 CR 271 (LAP), 2022 WL 2533287, at *7 (S.D.N.Y. July 7, 2022) (granting relief in part based on disparity between sentences of co-defendant).

To determine whether defendant's collective circumstances establish extraordinary and compelling reasons for a reduced sentence, the Court also considers her rehabilitation.[2] See United

---

2       Rehabilitation alone cannot constitute an extraordinary and compelling reason for relief. See 28 U.S.C. § 994(t) (while Sentencing Commission shall issue policy statements on

(continued . . .)

States v. Davila, No. 06-20056-01-KHV, 2022 WL 305389, at *2 (D. Kan. Feb. 2, 2022); see also

United States v. Foreman, No. 02-CR-135-TCK, 2021 WL 2143819, at *7 (N.D. Okla. May 26,

2021) (personal rehabilitation, lack of criminal history and disparity between defendant's sentence

and those sentenced for similar crimes after First Step Act constitute extraordinary and compelling

reasons for relief).

After Ivory was arrested on significant drug trafficking charges, defendant attempted to

have a witness killed.  Defendant's attempt resulted in the witness being shot in the legs and

suffering permanent injuries.  Despite defendant's egregious conduct, her rehabilitation efforts are

impressive.  Since her incarceration some 18 years ago, defendant has no disciplinary infractions.

By all accounts, she has been a model inmate.  For more than 15 years, she has been a leader in

the religious services department and "displayed a sincere desire for spiritual growth, a

commitment to personal transformation, and a dedication to serving others."   Letter from

Supervisory Chaplain, attached as Exhibit E to Motion For Reduction In Sentence Under The First

Step Act ("Compassionate Release") (Doc. #628).  She has been a de facto counselor, mentor and

spiritual advisor for other inmates at FCI Dublin and dedicated herself to helping others find

positive and spiritual outlets during incarceration.  See Exhibit H to Motion For Reduction In

Sentence Under The First Step Act ("Compassionate Release") (Doc. #628).  She has participated

in a variety of classes and maintained a work assignment as a Commissary Clerk for many years.

The government does not offer any argument to refute defendant's successful rehabilitation efforts.

In these circumstances, defendant's current medical conditions, the COVID-19 pandemic,

the disparity between her sentence and Ivory's revised sentence and her remarkable rehabilitative

---

[2](. . . continued)
what constitutes reasons for sentence reduction, "[r]ehabilitation of the defendant alone shall not
be considered an extraordinary and compelling reason.").

efforts collectively establish extraordinary and compelling reasons for release.

## II.    Section 3553(a) Factors

Next, the Court must determine whether a sentence reduction is warranted, and the extent of any reduction, under the applicable factors set forth in 18 U.S.C. § 3553(a).  See 18 U.S.C. § 3582(c)(1)(A).  The Court considers the nature and circumstances of the offense, defendant's personal history and characteristics, the purposes of sentencing including the need to protect the public from further crimes of the defendant, any threat to public safety and the need to avoid unwanted sentence disparities among defendants with similar records who are convicted of similar conduct.  See 18 U.S.C. § 3553(a).

The government argues that after balancing the Section 3553(a) factors, the Court should not alter defendant's sentence of 60 years, which is 30 years more than the revised sentence of the lead co-defendant.  The government utterly fails to address the need for a sentence to "avoid unwarranted sentence disparities" among defendants who have been found guilty of similar conduct.  18 U.S.C. § 3553(a)(6).  The Section 3553(a) factors counsel against the Court imposing a lengthier term of imprisonment on defendant than Ivory who—after all—proposed the plot to murder Atkins.

As explained above, defendant's criminal conduct in this case has troubled the Court.  Even so, defendant appears to have made remarkable progress toward rehabilitation.  On balance, some 18 years after defendant was incarcerated on this offense, the Court gives significant weight to her undisputed and extended rehabilitative efforts which suggest that she no longer poses a direct danger to society upon release.  Today, defendant has already served approximately 218 months in prison (the equivalent of 256 months with good time credit).  A reduced sentence under Section 3582(c)(1)(A) is consistent with the seriousness of the offense, the need for deterrence and

the need to protect the public.

The government argues that the Court should not reduce defendant's sentence because the victim opposes relief. In balancing the Section 3553(a) factors at defendant's original sentencing, the Court placed great weight on the victim's circumstances. Now, nearly 20 years later, the victim's circumstances—while still part of the Court's calculus of an appropriate sentence—must be balanced against all of the Section 3553(a) factors especially two significant changes since the original sentencing: (1) the reduction in the life sentence of the primary co-defendant which creates a significant sentencing disparity and (2) defendant's remarkable rehabilitation efforts. The record suggests no reason to believe that today, defendant would be a continued threat to the victim or that defendant would not abide by a no-contact condition of release. From the victim statement, the Court cannot determine whether the victim is aware of the extent of defendant's extensive rehabilitation efforts. In any event, the Court ultimately is responsible for balancing the Section 3553(a) factors and also considering whether conditions of release such as a no-contact condition could adequately address the victim's concerns.

In light of defendant's health conditions, the COVID-19 pandemic, the reduction in the sentence of her co-defendant, her rehabilitation and the applicable factors under 18 U.S.C. § 3553(a), the Court finds that a sentence of time served with a special term of supervised release including home confinement of three months is sufficient, but not greater than necessary, to reflect the seriousness of the offense, afford adequate deterrence, protect the public and provide defendant needed treatment in the most effective manner. See 18 U.S.C. § 3553(a)(2)(A)–(D). Accordingly, the Court reduces defendant's sentence of 60 years in prison to time served with a special term of supervised release of three months to start immediately on her release. During the special term of supervised release, defendant shall remain at her place of residence except for employment;

education; religious services; medical, substance abuse or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as pre-approved by the U.S. Probation Officer. During the special term of supervised release, defendant shall also follow all location monitoring procedures specified by the probation officer, and must contribute toward the cost, to the extent she is financially able to do so, as directed by the court and/or the probation officer. Defendant shall remain subject to her standard term of supervised release of five years, which will begin immediately after the expiration of the special term of supervised release.[3]  In addition to all the previously-imposed conditions of release and standard conditions of release, absent prior approval by the Court, defendant shall have no contact with Tania Atkins, or the family of Tania Atkins, including, but not limited to, contact in person, by phone, by computer, in writing or through a third party.

**IT IS THEREFORE ORDERED** that defendant's Motion For Reduction In Sentence Under The First Step Act ("Compassionate Release") (Doc. #628) filed May 12, 2022 is **SUSTAINED**. **Effective July 29, 2022, the Court reduces defendant's sentence of 60 years to TIME SERVED. Defendant shall immediately begin a special term of supervised release of three months. All terms and conditions that apply to defendant's standard term of supervised release (as set forth in the Judgment In A Criminal Case (Doc. #465) filed May 31, 2006 at 3) shall apply to defendant's special term of supervised release. In addition, during the special term of supervised release, defendant shall remain at her place of residence except for employment; education; religious services; medical, substance abuse or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities**

---

[3]     To ensure that the United States Probation Office has an opportunity to investigate defendant's proposed release plan, the Court delays the effective date of this order until July 29, 2022.

as pre-approved by the U.S. Probation Officer.  During the special term of supervised release, defendant shall also follow all location monitoring procedures specified by the probation officer, and must contribute toward the cost, to the extent she is financially able to do so, as directed by the court and/or the probation officer.  During the first 14 days of her special term of supervised release, defendant shall self-quarantine.  After the special term of supervised release expires, defendant will begin her standard term of supervised release of five years.  In addition to all the previously-imposed conditions of release and standard conditions of release, absent prior approval of the Court, defendant shall have no contact with Tania Atkins, or the family of Tania Atkins, including, but not limited to, contact in person, by phone, by computer, in writing or through a third party.

Except as modified above, all other terms and conditions of the **Judgment In A Criminal Case** (Doc. #465) filed May 31, 2006 shall remain in effect.

Dated this 21st day of July, 2022 at Kansas City, Kansas.

**Effective Date of Order: July 29, 2022**.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

12